## HORN v. LOUISIANA HIGHWAY COMMISSION et al.

No. 4269.

Court of Appeal of Louisiana. Second Circuit.

June 15, 1932.

R. W. Oglesby, of Winnfield, for appellants.

Cas Moss, of Winnfield, for appellee.

## McGREGOR, J.

This is the second time that this case has been before us. At the first trial in the district court there was judgment in favor of the plaintiff for $15.60 per week for a period of fifty-two weeks. The defendant appealed to this court, and on July 14, 1931, we remanded the case to the lower court to receive further testimony as to the nature and extent of the plaintiff's injuries. 17 La. App. 238, 135 So. 711.

At the end of the second trial there was judgment for the plaintiff for $15.60 per week for a period of sixty weeks, and the defendant has appealed again.

This is a suit brought under the Workmen's Compensation Law of Louisiana (Act No. 20 of 1914, as amended). At the time when he received the injuries complained of the plaintiff was working on a bridge building project. His immediate duties at the time carried him into a ten-foot ditch that was being dug to provide for the concrete foundation for the bridge. While he was in the ditch the sides or walls collapsed and caved in upon him and literally buried him alive. His fellow workers instantly came to his rescue and soon extricated him from his perilous condition.

As soon as possible after the accident the physician who represented the company that carried the employer's liability insurance on this job, in co-operation with the plaintiff's family physician, strapped his chest and back with adhesive tape in order to immobilize those parts, and, in addition thereto, administered hypodermics to relieve the pain. No broken bones were discovered at the time, but plaintiff was confined to his bed for four weeks or more. The accident occurred on December 2, 1929, and the first trial was begun on October 28, 1930, nearly eleven months thereafter. At that time plaintiff was still complaining of pains in his chest and also in his right knee and insisted that he was not able to do any work at all.

Dr. N. M. Brian, plaintiff's family physician, who has seen him constantly since the accident, testified that he was in a serious condition, and that he was not able to do any work of a reasonable nature. Mr. D. H. Gatlin, who was hurt in the same accident, testified that he had known the plaintiff for several years, and that he had never heard him complain before, but that he had complained constantly since the accident up to the time of the trial. Dr. H. O. Barker, a Roentgenologist of Alexandria, made an X-ray examination of plaintiff's chest on October 1, 1930, and found a fracture of the second rib on the left side. He found, also, that the end of this same rib had been torn loose from the sternum or breastbone. The two injuries appeared to be not over a year old and to have been received at the same time, from the same cause. He testified that a force sufficient to cause these two injuries would likely injure the pleura, and that the suffering might extend over a short period or a number of years. Ben Nut testified that he had known the plaintiff for twenty-five years; that he was a good worker and never complained before this accident; that he knew of his trying unsuccessfully to do a certain piece of work since the accident and that he was unable to perform any kind of manual labor. H. E. Robinson, a barber who has known the plaintiff for twelve years, says that he never complained before the accident, but that since then he complains all the time, and that, whenever he lays him down in the barber chair to shave him, he always cautions him not to hurt him.

Opposed to the testimony of the witnesses produced by plaintiff, the defendant offered the testimony of Dr. L. A. Wilkerson, the physician of the insurance company, who treated him at first, of Dr. M. Campagne of New Orleans, who represented the insurance company, of Dr. E. R. Bowie of New Orleans, a Roentgenologist in the employ of the insurance company, and of Dr. P. K. Rand, a prominent physician of Alexandria.

Dr. Wilkerson testified that he treated the plaintiff from December 2, 1929, the date of the injury, until some time in January, 1930, when he considered him fully cured. In order to treat the plaintiff fairly, however, he recommended to the insurance company that he be sent to New Orleans to be further examined by its physicians there. Dr. Campagne, one of these physicians, made both physical and X-ray examinations and found no explanation for the pains that the plaintiff was complaining of. Asked with reference to these pains, he replied that he could not explain them. No X-ray picture of the left side was made for the reason that the plaintiff complained mostly of his right side. Dr. Bowie testified that he made an X-ray examination of the plaintiff in New Orleans, for the insurance company, but that from his examination he saw no evidence of broken bones. After examining the X-ray picture made by Dr. Barker of the left side of plaintiff in October just before the trial, he (Dr. Bowie) agreed that it disclosed a fracture of the second rib, and that the fracture was not over a year old. Dr. Rand examined the plaintiff about ten days before the first trial and was unable to find any explanation for

the pains and disability complained of. Upon this testimony the trial judge awarded judgment to the plaintiff on the basis of total disability for a period of fifty-two weeks. In order for this judgment to have been rendered, the court evidently found and held the plaintiff to be totally disabled at the time of the trial, for at that time fifty-two weeks had not elapsed since the date of the injury. The evidence fully justifies the finding that the plaintiff was disabled at the time of the trial, but we find no evidence at the first trial to indicate that the disability would cease at the expiration of the time for which compensation was allowed. In a case of that kind compensation should be allowed for a period not to exceed four hundred weeks. There were several omissions in the transcript of the testimony that made it unintelligible. So in order to clear up this testimony and to discover the real state of the plaintiff's disability, we remanded the case for a new trial.

This new trial was held on September 25, 1931. The plaintiff, himself, Dr. N. M. Brian, his family physician, and W. Pate Everett, were sworn as witnesses for the plaintiff, while E. W. House and Alvis Barnes testified for the defendant. The only important matter developed at this trial was that on February 1, 1931, the plaintiff secured a job on a bridge construction project and worked for several months. This was the first work that the plaintiff had been able to perform since he received the injury and, without going into details, we find from a preponderance of the testimony that he was not able to do a full man's job at that time.

As stated above, in one of the X-ray pictures taken of the plaintiff's chest there appeared evidence of a fracture of the second rib on the left side. Defendant received information to the effect that, some ten or twelve years before the plaintiff received the injury complained of in this suit, he had a rib broken while he was working in a sawmill in Winnfield. Defendant sought to show that the fracture of a rib shown in the picture was received on this former occasion and that it was not, therefore, a part of the injury received on the occasion of the caving of the ditch. In order to hear evidence on this point the case was reopened by the trial judge, and on November 5, 1931, a large mass of testimony was received. Plaintiff and all the members of his family except his sick wife went on the stand and swore positively that he never received such an injury at that time. A number of his fellow workers testified that he did not even work on the job where it is claimed he received the alleged injury. On the other hand, defendant produced the physician who said he treated him for the alleged injury, together with other witnesses who said that they saw the accident. Dr. E. R. Bowie, defendant's Roentgenologist from New Orleans, sworn as a witness for the defendant on the first trial, was brought back at this third hearing, and he still maintained that the fracture shown in the picture is of recent origin. So we conclude that the defendant is mistaken in its contention that the fracture was received as claimed by it. With the passing of so many years the witnesses of defendant have become confused in their recollection and evidently were thinking of the wrong party or incident. After having heard all the testimony, the trial judge held that plaintiff was totally disabled from December 2, 1929, the date of the injury, to February 1, 1931, the date when he went to work, but that the way in which he performed the work on this job for several months indicated that he was fully recovered and had no disability at that time.

Since the plaintiff appears satisfied with the judgment, it becomes unnecessary to discuss it except from the defendant's standpoint. Counsel for defendant contends most earnestly that the plaintiff is a malingerer and a fake. We have studied the record carefully on this point. We find nothing to justify such a charge. As far as we can discern from the testimony, the plaintiff is an honest upright citizen and has always been a faithful and earnest worker. The fact that some of the physicians in the case cannot explain the pain and discomfort complained of by the plaintiff by no means disproves their existence. It is often beyond the power of medical science to explain many symptoms evidenced by patients. No one but the real sufferer knows the severity of his pain. After the harrowing experience of being crushed by these caving walls as plaintiff was, it is not to be wondered at that he suffered intensely. The anatomy of the chest is such that often it is impossible to locate internal pains of great severity. Much is made of the fact that plaintiff complained mostly of pain in his right side, when the broken bone was in his left side. Dr. Brian testified that plaintiff's entire chest was taped on both sides. This probably brought greater relief to that broken rib than it did to some undisclosed internal injury on the right side. Or, perhaps, the pain may have been sympathetic. In any event, we believe that the plaintiff actually suffered as he says he did and that up to the time he went to work again on February 1, 1931, he was totally disabled for work of any reasonable character.

For the reasons assigned, the judgment appealed from is affirmed, with all costs to be paid by the defendant.